UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE KENNETH STUCKEY, JR., | No. 2:20-cv-0834-TLN-EFB P |
| Plaintiff, | |
| v. | ORDER |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in this action brought pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). The court screened the complaint on May 13, 2020 and found that plaintiff had stated some cognizable claims and some that were not cognizable. ECF No. 7. The court provided plaintiff with an opportunity to file an amended complaint, which he has done. ECF No. 12.[1]

I. Screening Requirement and Standards

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which

---

[1] Plaintiff filed a motion for leave to file an amended complaint following the screening order. ECF No. 11. Because the court had already granted plaintiff leave to file an amended complaint, this unnecessary motion is denied as moot.

1

relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a)(2) "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 562-563 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). While the complaint must comply with the "short and plaint statement" requirements of Rule 8, its allegations must also include the specificity required by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-557. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

Furthermore, a claim upon which the court can grant relief must have facial plausibility. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, *Erickson v. Pardus*, 551 U.S. 89 (2007), and construe the complaint in the light most favorable to the plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

II.     Plaintiff's Allegations

The amended complaint contains the following factual allegations:

There are three levels of mental health treatment within the California Department of Corrections and Rehabilitation ("CDCR"): (1) CCMS (plaintiff does not explain the acronym), (2) EOP, which stands for "enhanced outpatient care" and provides a higher level of care than inmates receive at the CCMS level, and (3) MHCB, which stands for "mental health crisis bed"

1    and provides for a higher level of care than EOP.  According to plaintiff, inmates receiving care at
2    the EOP and CCMS levels are not supposed to be housed with inmates in the general population
3    and are also separated from general population inmates in administrative segregation.
4            Plaintiff has a history of bipolar disorder and schizophrenia, although he does not
5    currently receive treatment for either condition and is currently classified as a "GP," or general
6    population, inmate.  However, if plaintiff is placed in a negative environment, his psychiatric
7    symptoms can reemerge.  In February 2020, plaintiff was housed at Pelican Bay State Prison
8    ("PBSP"), a Security Level 4 institution.  On February 7, 2020, plaintiff arrived at Deuel
9    Vocational Institute ("DVI"), a Level 3 institution, en route to a court appearance in Fresno.
10   Inmates from Level 4 institutions cannot be housed in the general population of a Level 3
11   institution, and when plaintiff arrived at DVI he was deemed a security threat due to his Level 4
12   status.
13           Defendant Lieutenant W.A. Dobie was aware of plaintiff's mental health history, his GP
14   status, and that he was not currently receiving mental health treatment.  He placed plaintiff in the
15   K1 administrative segregation unit of the prison, in which defendant Warden Burton allowed his
16   subordinates to place GP inmates along with CCMS and EOP inmates.  Defendant Correctional
17   Officer Pinhiero escorted plaintiff to cell 105 in the K1 unit.  Next door, in cell 106, lived inmate
18   Fernandez, an EOP/CCMS inmate who was engaging in "psycho-mania behavior" that numerous
19   nurses had complained about directly to Pinhiero.
20           Pinhiero told plaintiff that Fernandez was an EOP/CCMS inmate.  Plaintiff told Pinhiero
21   that he was a GP inmate and thus not supposed to be housed "around EOP."  Pinhiero responded
22   that he had heard from PBSP that plaintiff liked filing grievances against officers and "we don't
23   like snitches here, so we have a nice crazy EOP guy who's going to have fun with you."  Pinhiero
24   told plaintiff that he had heard from defendant Dobie that plaintiff was suing specific PBSP
25   officers.
26           From February 7, 2020 through February 11, 2020, Fernandez "terrorized the plaintiff by
27   engaging in psycho-mania behavior by repeatedly screaming and beating on the plaintiff's wall,
28   24 hours a day, preventing the plaintiff from sleeping, which caused the plaintiff to experience

nonstop headaches and depression." Pinhiero and defendant Correctional Officer Roy were aware of Fernandez's behavior but took no action and refused plaintiff's request to be moved. Roy told plaintiff that he had been told that plaintiff was "a Pelican Bay snitch." Plaintiff asked Roy if that was the reason he refused to move plaintiff to another cell, and Roy said it was.

DVI operates under a policy called Operational Procedure # 167 ("OP #167"), which provides: "Any arriving inmate being screened in receiving and release that is intended to be placed in ASU [administrative segregation unit] must be housed in an intake cell unless the inmate can be safely double celled upon intake, and for whom an appropriate compatible cell partner is available." Plaintiff's classification was such that he could not be safely double-celled. But plaintiff's mental health history entitled him to the accommodation of not being housed with EOP/CCMS inmates. Instead, plaintiff should have been placed in an administrative segregation unit housing only GP inmates. According to plaintiff, OP #167 is unconstitutional because it allows GP inmates to be housed with EOP/CCMS inmates, placing the GP inmates at risk for psychological injuries like the ones he suffered from being housed next to Fernandez.

Defendants CDCR Secretary Ralph Diaz, Burton, Chief of Healthcare and Inmate Appeals S. Gates, DVI Chief of Mental Health L. Lipsker, CDCR, and DVI had received many complaints between December 2018 and February 2020 "involving" OP #167 and the "unconstitutional policy at DVI allowing GP and EOP/CCMS inmates to be housed together in administrative segregation." These individuals and entities failed to take reasonable measures to fix the policy. This failure led to the violations of plaintiff's rights through the housing placement next to Fernandez.

Plaintiff filed a grievance of the housing placement. Defendant Sergeant C. Shaw interviewed plaintiff about the grievance on February 24, 2020. He refused to interview two inmates who plaintiff asked him to interview. Defendant Associate Warden M. Vivero, as Shaw's superior, did not rectify Shaw's failure to interview the witnesses. Defendant Lieutenant E. Spangler reviewed plaintiff's grievance on April 9, 2020, but also refused to interview plaintiff's witnesses, and Burton did not rectify this failure or interview plaintiff's witnesses himself.

4

Plaintiff also filed a healthcare grievance of the housing plaintiff. Defendant Appeals Coordinator C. Stoltenberg interviewed plaintiff about the grievance but refused to interview plaintiff's witnesses. Lipsker did not rectify Stoltenberg's refusal to interview witnesses or interview the witnesses himself.

Lastly, plaintiff alleges that, "The defendants treated the plaintiff differently from other general population inmates, by housing him alongside EOP inmates in ad seg, while not allowing GP inmates to be housed alongside EOP inmates in general population, which violates plaintiff's equal protection rights under the constitution."

III. Analysis

Plaintiff arranges the amended complaint into four broad "claims." In Claim One, plaintiff alleges that defendants Burton, Dobie, Pinhiero, and Roy violated his rights under the Americans with Disabilities Act ("ADA"), the First Amendment, the 14th Amendment "liberty interest," and the Eighth Amendment. In Claim Two, plaintiff alleges that defendants Diaz, Burton, Gates, CDCR, DVI, and Lipsker violated his rights under the Eighth Amendment, the 14th Amendment "due process," and the ADA. In Claim Three, plaintiff alleges that defendants Shaw, Spangler, Burton, Vivero, Stoltenberg, and Lipsker violated his 14th Amendment due process rights and his Eighth Amendment rights. In Claim Four, plaintiff alleges that defendants Burton, DVI, and Lipsker violated his rights under the 14th Amendment's Equal Protection Clause. Plaintiff seeks compensatory and punitive damages.

A. Improper Defendants

As in the initial screening order, the court must assess whether plaintiff has sued entities which may not be sued under § 1983. That statute provides a cause of action against "[e]very person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution" or other federal law. States and state agencies are not "persons" within the meaning of the statute and are entitled to immunity under the 11th Amendment. *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) (citing *Will v. Dep't of State Police*, 491 U.S. 58 (1989) and *Mt. Healthy City School Dist. Bd. Of*

5

*Educ. v. Doyle*, 429 U.S. 274 (1977)). Accordingly, plaintiff's constitutional claims against CDCR and DVI (Claim 2's claims of violation of the Eighth and 14th Amendments) fail as a matter of law, just as they did when plaintiff first alleged them. *Id., Allison v. Cal. Adult. Auth.*, 419 F.2d 822, 823 (9th Cir. 1969); *Thompson v. City of Honolulu*, No. 17-00002 JMS/KSC, 2017 U.S. Dist. LEXIS 7110, at *7 (D. Haw. Jan 18, 2017).[2]

### B.   ADA Claim

The ADA prohibits public entities, which includes prisons, from discriminating against qualified disabled individuals by excluding them from or denying them the benefits of services, programs, or activities of the public entities. 42 U.S.C. § 12132; *Duffy v. Riveland*, 98 F.3d 447, 455-56 (9th Cir. 1996). To allege a violation of Title II of the ADA, a plaintiff must state facts showing that (1) he is disabled; (2) he is otherwise qualified to participate; (3) the defendant prevented his participation in or denied him the benefits of a service, program, or activity or otherwise subjected him to discrimination; (4) the defendant's decision was based on plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *see also Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (holding that, to recover money damages for violation of Title II of the ADA, plaintiff must prove that defendants acted with intent to discriminate against him because of his disability).

Plaintiff alleges that his mental health history renders him disabled under the ADA and alleges that defendants Burton, Dobie, Pinhiero, Diaz, Gates, Lipsker, CDCR, and DVI violated his rights under the Act. Even assuming that plaintiff's past mental health treatment brings him within the ADA's purview, plaintiff has not alleged that any defendant placed him, or approved of his placement in, K1 building next to inmate Fernandez by reason of that disability. To show discriminatory intent under the ADA, plaintiff must state facts showing that defendants acted with deliberate indifference by (1) knowing that plaintiff faced substantially likely harm to a federally-protected interest and (2) failing to act on that likelihood. *Duvall*, 260 F.3d at 1139. Here, as

---

[2] The question of whether Congress has validly abrogated the states' sovereign immunity under Title II of the ADA (which governs plaintiff's ADA claims) is more complicated. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). However, because plaintiff's ADA claims fail for other reasons provided in this order, the court need not address the issue at this time.

with the original complaint, plaintiff alleges clearly that he was placed in cell 105 for two reasons – because his security classification meant he could not be placed in the general population at DVI and because certain correctional officers had heard he was a "snitch" and wished to subject him to Fernandez's harassing behavior.  While plaintiff states conclusorily that he was owed an accommodation of being rehoused, the amended complaint contains no facts showing that he informed any defendant that he needed to be housed apart from Fernandez *because of his disability*, that any defendant knew that the housing decision subjected plaintiff to harm because of his past mental illness, or that a statute or regulation required separate housing of inmates who formerly received mental health care from those currently receiving mental health care.  *See Duvall*, 260 F.3d at 1139 ("When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required and the plaintiff has satisfied the first element of the deliberate indifference test.").  Instead, plaintiff states that he told defendants that he should not be housed next to Fernandez because plaintiff was a GP inmate, which carried no specific connotation of disability (and, in fact, indicated no current mental illness).  Accordingly, plaintiff's ADA claims fail and must be dismissed with leave to amend.[3]

      C.     Retaliation Claim

To state a claim for retaliation in violation of the First Amendment, a prisoner must allege facts showing five elements: (1) that a state actor took some adverse action against him (2) because of (3) his protected conduct, (4) that such action chilled his exercise of his First Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The plaintiff need not allege that his speech was actually inhibited or suppressed, but merely that the defendant's conduct was

---

[3] The court further notes that plaintiff may not assert a claim under Title II of the ADA against individuals in their individual capacities.  42 U.S.C. § 12131(1)(A)-(B); *Fresquez v. Moerdyk*, No. 1:04-cv-05123-AWI-GSA-PC, 2011 U.S. Dist. LEXIS 62840, at *15-16 (E.D. Cal. June 13, 2011).  The statute authorizes only claims against public entities.  Plaintiff has not made clear whether the individual defendants are sued in their individual capacities, their official capacities, or both.  To the extent he asserts ADA claims against individual defendants in their individual capacities, these claims fail for this additional reason.

such as would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568-69. Conduct protected by the First Amendment includes communications that are "part of the grievance process." *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).

Plaintiff asserts his retaliation claim against defendants Burton, Dobie, Pinhiero, and Roy. However, the amended complaint again contains no facts indicating that Burton placed him next to Fernandez in administrative segregation (or approved of that placement, or acquiesced to such placement) because of plaintiff's grievances or litigation against officers at Pelican Bay. Accordingly, plaintiff's retaliation claim against Burton fails and must be dismissed with leave to amend.

Liberally construed, and for the limited purposes of screening under § 1915A, plaintiff's amended complaint states a potentially cognizable claim against Dobie, Pinhiero, and Roy for retaliation in violation of the First Amendment.

    D.    <u>14th Amendment Claim</u>

The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Plaintiff's due process claim against Diaz, Burton, Gates, Dobie, Pinhiero, and Roy (alleged in Claims One and Two) is not clearly articulated; it is therefore unclear whether plaintiff claims that his being housed next to Fernandez violated his substantive due process rights or whether plaintiff contends that he should have been provided with some procedural protections (notice or a hearing, for example) in connection with defendants' housing decision.

To state a substantive due process claim, a plaintiff must "show both a deprivation of [his] liberty and conscience shocking behavior by the government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). Plaintiff's confinement in administrative segregation next to a disruptive inmate for less than four days while in transit to a court appearance is not the type of "conscience shocking" behavior that violates substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-47 (1998). Moreover, this type of claim is a classic "conditions of confinement" claim that is analyzed under the Eighth Amendment. "If a constitutional claim is

covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under that provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).  Thus, to the extent plaintiff asserts a substantive due process claim, that claim must be dismissed.

Procedural due process refers to the notion that, when depriving an individual of a constitutionally-protected life, liberty, or property interest, government authorities must provide some procedural protections to that individual.  *See Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).  To determine what kind of procedural protections are required by deprivation of a protected interest, courts must consider three factors: (1) the private interest that will be affected by the action; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

In the context of a prison, a deprivation of liberty requires procedural protections only where it is an "atypical and significant" hardship when compared with prison life in general. *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995).  The Due Process Clause itself does not confer any right to procedural protections from official action taken within the sentence imposed on the inmate, which includes the possibility of confinement in administrative segregation.  *Id.* at 480. As the court stated in its initial screening order, it is doubtful that confinement next to a disruptive inmate for less than four days while an inmate is in transit to another facility constitutes an atypical and significant hardship; there is no reason to believe that such housing situations do not arise in general population housing units as well.  Plaintiff has again failed to include facts from which the court could conclude that his interest in not being housed next to Fernandez was of constitutional significance or what procedures were or were not provided to him in connection with the housing decision.  Accordingly, the court must again dismiss this procedural due process claim but will allow plaintiff one more opportunity to amend to attempt to state facts showing that he had a protected interest, that he was deprived of that interest, and that the procedures provided in connection with that deprivation were constitutionally deficient.

Plaintiff also alleges that his due process rights were violated when several defendants refused to interview his requested witnesses in connection with his administrative appeal of the housing decision and/or refused to correct the decision of their subordinate not to interview the witnesses. Plaintiff has no due process right to have witnesses interviewed in connection with his administrative appeal. *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003) ("[Plaintiff]'s claimed loss of a liberty interest in the processing of his appeals does not satisfy [the due process] standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure."). Accordingly, plaintiff's due process claims against defendants Shaw, Spangler, Burton, Vivero, Stoltenberg, and Lipsker related to the processing of his grievance must be dismissed.

### E. Eighth Amendment Claim

Plaintiff alleges that defendants Diaz, Gates, Lipsker, Burton, Dobie, Pinhiero, and Roy deprived him of his Eighth Amendment rights by housing him next to Fernandez, by acquiescing to that decision, or by promulgating or allowing a policy to be pursued at DVI whereby general population inmates could be housed with mentally ill inmates in administrative segregation.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions-of-confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731-32 (9th Cir. 2000) (quotations and citations omitted).

To succeed on an Eighth Amendment claim predicated on indifference to medical needs, a plaintiff must establish that: (1) he had a serious medical need and (2) the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton

infliction of pain. *Jett*, 439 F.3d at 1096. To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Thus, a defendant will be liable for violating the Eighth Amendment if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

Plaintiff alleges that Dobie knew of his history of mental illnesses but intentionally placed him at risk of having those illnesses retriggered by housing him around EOP/CCMS inmates. But plaintiff does not allege any facts showing that Dobie knew that, because of his past mental illness, plaintiff faced a substantial risk of serious harm by being housed with such inmates. Plaintiff does not allege that any other defendant knew that he had suffered from bipolar disorder and schizophrenia. Thus, the allegations of the complaint are insufficient to show that defendants were deliberately indifferent to a medical need that plaintiff may have had not to be housed next to a disruptive inmate.

The allegations sufficiently state that defendants Pinhiero and Roy knew that plaintiff's mental health would be harmed by Fernandez and deliberately placed him next to Fernandez, or declined to move him elsewhere, in order to subject plaintiff to that disturbance. These allegations, liberally construed and for the purposes of screening under § 1915A only, state a potentially cognizable claim that Pinhiero and Roy violated plaintiff's Eighth Amendment rights by housing plaintiff next to Fernandez.

Plaintiff does not state facts showing that defendant Dobie knew that plaintiff's cell was next to an inmate who was so disruptive as to deprive plaintiff of the minimal measure of civilized life and placed him there anyway. Nor does plaintiff allege that any of the supervisory defendants (Diaz, Gates, Burton, and Lipsker) were aware that housing mental health patients with general population inmates in administrative segregation at DVI would cause such deprivations to occur. Plaintiff only vaguely alleges that these individuals received "complaints

11

involving" OP #167, but he includes no facts showing that the nature of these complaints was such as to put defendants on notice that the policy was causing, or would cause, inmates to suffer deprivation of their basic needs. Plaintiff's contention that OP #167 is unlawful because it allows GP inmates to be housed with CCMS/EOP inmates does not make facial sense. That policy, as alleged by plaintiff, provides only that incoming inmates headed for administrative segregation should be placed in an intake cell or double celled if appropriate. It does not speak to the issue of placing GP inmates in the same units as CCMS/EOP inmates. Thus, plaintiff's Eighth Amendment claims against Dobie, Diaz, Burton, Lipsker, and Gates must be dismissed with leave to amend.

F.  Equal Protection

Lastly, plaintiff claims that defendants Burton and Lipsker violated his rights under the Equal Protection Clause because they "treated the plaintiff differently from other general population inmates, by housing him alongside EOP inmates in administrative segregation while not allowing GP inmates to be housed alongside EOP inmates in general population."

To state a claim for discrimination under the Equal Protection Clause, a plaintiff must allege that the defendant acted with an intent to discriminate against him on the basis of his membership in a protected class. *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001). If the plaintiff is not a member of a protected class, he may assert an equal protection claim as a "class of one" by alleging that defendants intentionally treated him differently than other similarly situated individuals with no rational reason. *See Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601, (2008) (noting that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'"); *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (the Equal Protection Clause, including "class of one" claims, is directed against "intentional and arbitrary discrimination").

Plaintiff has not alleged that he is a member of a protected class. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 445-46 (1985) (indicating that the mentally ill do not

comprise a suspect class). And while he alleges that he was intentionally treated differently than the other GP inmates housed at DVI, he was not similarly situated to those individuals. Instead, he was transiting through DVI for a short time, carrying his Level 4 security classification into this Level 3 prison. Thus, the group of inmates who are similarly situated to plaintiff are other Level 4 GP inmates temporarily housed in DVI. The complaint does not allege that plaintiff was treated any differently than those similarly situated individuals without a rational reason. Thus, his equal protection claim must be dismissed with leave to amend.

G. Summary

Plaintiff may choose to proceed only with his retaliation claims against defendants Dobie, Pinhiero, and Roy and his deliberate indifference claims against defendants Pinhiero and Roy. Alternatively, the court will provide plaintiff with one final opportunity to amend his complaint again to remedy the claims identified as defective in this order.

He is cautioned that any amended complaint must identify as a defendant only persons who personally participated in a substantial way in depriving him of his constitutional rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). Plaintiff may also include any allegations based on state law that are so closely to his federal allegations that "the form the same case or controversy." *See* 28 U.S.C. § 1367(a).

The amended complaint must also contain a caption including the names of all defendants. Fed. R. Civ. P. 10(a).

Plaintiff may not change the nature of this suit by alleging new, unrelated claims. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Nor may he bring multiple, unrelated claims against more than one defendant. *Id.*

Any amended complaint must be written or typed so that it is complete in itself without reference to any earlier filed complaint. E.D. Cal. L.R. 220. This is because an amended complaint supersedes any earlier filed complaint, and once an amended complaint is filed, the earlier filed complaint no longer serves any function in the case. *See Forsyth v. Humana*, 114

1  F.3d 1467, 1474 (9th Cir. 1997) (the "'amended complaint supersedes the original, the latter
2  being treated thereafter as non-existent.'") (*quoting Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir.
3  1967)).

4      Any amended complaint should be as concise as possible in fulfilling the above
5  requirements. Fed. R. Civ. P. 8(a). Plaintiff should avoid the inclusion of procedural or factual
6  background which has no bearing on his legal claims. He should also take pains to ensure that his
7  amended complaint is as legible as possible. This refers not only to penmanship, but also spacing
8  and organization. Plaintiff should carefully consider whether each of the defendants he names
9  actually had involvement in the constitutional violations he alleges. A "scattershot" approach in
10 which plaintiff names dozens of defendants will not be looked upon favorably by the court.

11 IV.   Order

12     Accordingly, it is ORDERED that:

13     1. Plaintiff's motion for leave to file an amended complaint (ECF No. 11) is denied
14        as moot.
15     2. Plaintiff's complaint alleges, for screening purposes, viable: (1) Eighth
16        Amendment deliberate indifference claims against defendants Pinhiero and Roy
17        and (2) First Amendment retaliation claims against defendants Dobie, Pinhiero,
18        and Roy.
19     3. All other claims are dismissed with leave to amend within 30 days from the date
20        of service of this order. Plaintiff is not obligated to amend his complaint.
21     4. Within thirty days plaintiff shall return the notice below advising the court
22        whether he elects to proceed with the cognizable claim or file an amended
23        complaint. If the former option is selected and returned, the court will enter an
24        order directing service at that time.
25 /////
26 /////
27 /////
28 /////

5. Failure to comply with any part of this this order may result in dismissal of this action.

DATED: September 29, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE KENNETH STUCKEY, JR., | No. 2:20-cv-0834-TLN-EFB P |
| Plaintiff, | |
| v. | NOTICE OF ELECTION |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

In accordance with the court's Screening Order, plaintiff hereby elects to:

    (1) _____    proceed only with the Eighth Amendment claims against defendants Pinhiero and Roy and the First Amendment retaliation claims against defendants Dobie, Pinhiero, and Roy;

OR

    (2) _____    delay serving any defendant and file a second amended complaint.

_____
Plaintiff

Dated:

16